*735 TEXTO COMPLETO DE LA SENTENCIA
El recurrente, señor Nicolás Fradera Olmo (en adelante, Sr. Fradera), quien se encuentra confinado bajo la custodia de la Administración de Corrección, comparece por derecho propio y nos solicita la revisión de la determinación emitida el 25 de abril de 2006 por el Comité de Clasificación y Tratamiento de la Institución Correccional 384, Sabana Hoyos (en adelante, el Comité). Mediante la misma, el Comité lo reclasificó a custodia mediana.
Por los fundamentos que expondremos, se confirma la determinación recurrida.
I
Según surge de autos, el Sr. Fradera cumple sentencia de ocho años de prisión por los delitos de escalamiento agravado, infracción al Artículo 412 de la Ley de Sustancias Controladas, e infracción al Artículo 18 de la Ley Para la Protección de Propiedad Vehicular. Ingresó al sistema penal el 28 de enero de 2003. El 7 de junio de 2005 cumplió el mínimo para ser referido a la Junta de Libertad Bajo Palabra, y tentativamente extinguirá el máximo de su sentencia el 12 de septiembre de 2007.
El 10 de febrero de 2005, el Comité determinó que el Sr. Fradera era acreedor a custodia mínima. Ello, por haber cumplido tiempo considerable de una sentencia relativamente corta. Además, por no tener casos pendientes, ni historial de fuga, no haberse radicado querellas en su contra, tener ajustes satisfactorios y haber concluido satisfactoriamente el Programa de Trastornos Adictivos. La puntuación resultante en el Formulario de Escala de Clasificación de Custodia fue de cuatro puntos, lo que le hacía acreedor, además, a una custodia de mínima seguridad.
Luego de un año, el 23 de febrero de 2006, el Comité reevaluó la clasificación del Sr. Fradera y ratificó su custodia en mínima. Esta vez, también resultó con puntuación de cuatro en el Formulario de Escala de Reclasificación de Custodia.
Sin embargo, el 10 de marzo de 2006, el Sr. Fradera fue trasladado a la Institución Ponce Adultos 1000, conforme a la Regla 23 del Reglamento de Procedimientos Disciplinarios y Participantes de Programas de Desvíos y Comunitarios del Departamento de Corrección y Rehabilitación, Reglamento Núm. 6994 de 28 de julio de 2005. Ello, bajo el fundamento de que en esa fecha se había recibido información y se había ocupado correspondencia, durante los registros a las áreas de vivienda, que apuntaba a que el Sr. Fradera pertenecía a un grupo de confinados que extorsionaban a otros miembros de la población penal. Alegadamente le solicitaban dinero para costear la introducción de teléfonos celulares y sustancias controladas a la institución penal.
Al mes siguiente, el 20 de abril de 2006, el Comité de la Institución de Ponce Adultos 1000, al no contar con la anterior información, ratificó la custodia del Sr. Fradera en mínima. Así, solicitó el traslado de éste a la Institución 384 en Sabana Hoyos para darle una mejor ubicación para su plan institucional. En esta ocasión, la puntuación obtenida en el Formulario de Escala de Reclasificación de Custodia fue de un punto.
No obstante, cinco días más tarde, el 25 de abril de 2006, mediante una revisión automática no rutinaria, el Comité reclasificó al Sr. Fradera en custodia mediana y solicitó su traslado a otra institución. Esta vez se obtuvo nueva información que indicaba que el recurrente estaba causando problemas de manejo. El Sr. Fradera apeló dicha determinación ante el Director de Clasificación y la misma le fue denegada mediante comunicación de 1 de junio de 2006. El Director confirmó los acuerdos y fundamentos adoptados por el Comité en su resolución de 25 de abril de 2006.
Inconforme con dicha determinación, el Sr. Fradera recurre ante nos y nos solicita que revisemos la misma. En el escrito presentado ante este Tribunal de Apelaciones, el Sr. Fradera no formula señalamiento específico de *736 error. Arguye que siempre ha observado buenos ajustes institucionales; que no ha violado ninguna norma del Reglamento Disciplinario de la Institución; que el 27 de junio de 2005 fue trasladado a la Institución Guerrero de Aguadilla injustamente, mediante Regla 22; que no se le dió la vista correspondiente para la Regla 22; que luego de los siete días reglamentarios fue ubicado en custodia mínima y se le asignaron labores en el área de mantenimiento de la cocina; que durante el año que estuvo en la Institución Guerrero no incurrió en violaciones de Reglamento y que siempre acató los acuerdos del Comité; que por razón de ello, el 10 de febrero de 2006, el Comité de la Institución Guerrero lo reclasificó a custodia mínima y el 24 del mismo mes y año solicitó su traslado a la Institución Sabana Hoyos, para mejorar su ubicación porque es natural de Utuado; que el 10 de marzo de 2006, luego de concluido un registro general se le ordenó recoger sus pertenencias para ser trasladado a la Institución Ponce Adultos 1000; que la vista de Regla 22 fue celebrada el 17 de marzo y el 28 de marzo de 2006 recibió la resolución; que dicha determinación recomendó referir su caso para los procedimientos correspondientes a un nuevo plan institucional; que luego, el 19 de abril de 2006, el Comité de Ponce Adultos lo reclasificó a mínima y solicitó su traslado a Sabana Hoyos; que una vez trasladado, el Comité de Sabana Hoyos se reunió de forma no rutinaria y volvió a reclasificarlo a mediana; que luego fue trasladado al Anexo 352 en Río Piedras bajo custodia protectiva; que en esa institución se le ha afectado su salud, y además no existen las herramientas necesarias para beneficiarse de un Plan Institucional.
Arguye además el Sr. Fradera, que toda esta situación ha afectado la salud de sus familiares, en particular la de su señora madre y su señor padre que son personas de 70 y 80 años de edad, respectivamente; que también se han afectado las relaciones con su única hija, ya que por la distancia entre el Pueblo de Jayuya donde ella reside y la institución Anexo 352, ésta no ha podido visitarlo desde hace más de dos y medio meses. Alega, que toda esta situación es producto de la irresponsabilidad del Comité de la Institución 384 en Sabana Hoyos; que ha sido víctima de prejuicios y persecución por dicho comité y por algunos de sus miembros; que prueba de ello es que en menos de tres meses su custodia ha sido reclasificada en tres ocasiones, y que el propósito de estas personas es afectar sus ajustes institucionales. Señala, que conforme al Manual de Clasificación y Tratamiento debe estar clasificado en custodia mínima y asignado a la población general, porque su puntuación en el Formulario de Escala de Clasificación de Custodia es de uno. Además, aunque no lo solicita expresamente, parece sugerir que debe estar ubicado en una institución que esté situada a menor distancia de la residencia de sus familiares, como la Institución 384 en Sabana Hoyos.
La Administración de Corrección, a través del Procurador General, presentó Escrito en Cumplimiento de Orden en el cual nos solicita que confirmemos la determinación recurrida.
II
En cuanto al planteamiento referente a la reubicación de institución, cabe señalar que la ley habilitadora de la Administración de Corrección, Ley Núm. 116 del 22 de julio de 1974, 4 L.P.R.A. sec. 1101, et seq., dispone en su Art. 5(e) que el Administrador tendrá facultad para:

“(e) Determinar, conforme a la evaluación que haga el personal a cargo del tratamiento o especialistas, y la reglamentación que promulgue la Administración a estos efectos, las instituciones operadas por esta última o por cualquier otra entidad gubernamental o privada en que habrá de ser ingresada, o a las que habrá de ser trasladada, la clientela del sistema penal. ”

Por su parte, el Manual de Clasificación de Confinados del 22 de enero de 2000, en la Sección 8, Art. II, dispone que:

“A. Los siguientes factores pueden ser el fundamento para tomar en consideración el traslado de un confinado de una institución a otra:

1. El control de la población y razones de manejo;

*737 2. Cambios en el nivel de custodia del confinado;

3. Comportamiento continuo que represente un serio problema de adaptación, que no se ajuste a las normas institucionales y al plan institucional para el confinado;

4. Recomendación del Tribunal;

5. Necesidades de cuidado médico o de tratamiento; (No discrecional)

6. Necesidades de tratamiento psiquiátrico o psicológico; (No discrecional)

7. Riesgo de fuga;

8. Ubicar al confinado más cerca de su hogar y su familia, y/o para aumentar las visitas al confinado;

9. Permitir que el confinado participe en los programas educativos, de trabajo o de otro tipo recomendados;

10. Traslado de custodia protectiva a la población general; y

11. Traslado de segregación administrativa a la población general. ”

Como puede notarse de los artículos antes citados, el listado incluye como factor número 8, la ubicación cercana del confinado con su familia. Además incluye otros factores como el número 5 y 6 que especifica y expresamente contienen una instrucción de que no son discrecionales. A diferencia de los factores 5 y 6, el 8 no tiene esa directriz, lo que claramente demuestra que es discrecional como todos los demás que no indican lo contrario.
Por otro lado, el Art. IV del mismo Manual dispone sobre el procedimiento de solicitudes de traslado generadas por la institución, y en su inciso B dispone sobre Confinados Sentenciados:

“En el caso de un confinado en status de sentenciado, la petición solicitada a instancias del confinado o del personal, será gestionada por el Técnico Sociopenal y enviada al Comité de Clasificación y Tratamiento de la institución para su revisión y aprobación. El Superintendente de la institución revisará entonces todas las recomendaciones, y tomará la decisión final de aprobar o denegar la solicitud, excepto en los casos en que el traslado sea resultado de una decisión de clasificación para la cual el confinado ha solicitado apelación, en cuyo caso se seguirá con el procedimiento de apelación. No obstante, si el Superintendente aprueba una solicitud de traslado generada por la institución, la misma se le enviará a la División Central de Clasificación para recomendaciones y ala OMP para ubicación. ”

En síntesis, la Administración de Corrección tiene la facultad para decidir cómo ubicar a los confinados, según las leyes y reglamentos vigentes, que en su aspecto más elemental disponen que el confinado tiene que estar ubicado en la institución que ofrezca el nivel de custodia que le corresponde según la sentencia que le fue impuesta. Queda evidente que al confinado no se le reconoce derecho a estar ubicado en la institución más cercana a la residencia de su familia. En la jurisdicción federal tampoco se ha reconocido que un confinado tiene derecho a estar recluido en determinada institución penal, por lo que el traslado a una institución más cercana a la residencia familiar constituye un traslado por conveniencia cúya realización representa- un acto puramente discrecional de la administración correccional. Véase Overton v. Bazzetta, 539 U.S. 126 (2003); Olim v. Wakinekona, 461 U.S. 238 (1983); Montanye v. Haymer, 427 U.S. 236 (1975).
De otra parte, el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los *738 Miembros de la Población Correccional del 2 de enero de 2002 contiene un procedimiento de revisión y apelaciones para cuando un miembro de la población correccional no está conforme con alguna determinación tomada por la Administración de Corrección. De la solicitud de revisión judicial presentada por el recurrente no se desprende que éste, antes de acudir ante este Foro, haya agotado todos los remedios administrativos disponibles, en relación a su alegado problema de ubicación.
Es clara normativa de derecho que se deben agotar los remedios administrativos antes de acudir a los tribunales de justicia. Acevedo v. Mun. de Aguadilla, 153 D.P.R. 788 (2001). De igual forma, los Tribunales pueden abstenerse de revisar la decisión administrativa hasta tanto se emita una determinación final y firme por la agencia.
III
La clasificación de los confinados, función delegada a la Administración de Corrección, se rige por el Manual de Reglas para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Penales de 27 de febrero de 1979 (Manual de Reglas de 1979) y por el Manual de Clasificación de Confinados (Manual de Clasificación), Reglamento Núm. 6067, de 22 de enero de 2000, aprobados conforme a las disposiciones Ley Núm. 116 de 22 de julio de 1974, según enmendada, 4 L.P.R.A. § 1101 et seq.
El Manual de Reglas de 1979 crea el Comité de Clasificación y Tratamiento en las Instituciones Penales y define sus funciones. Su función básica es la de evaluar al confinado en términos de sus necesidades, capacidades, intereses, limitaciones y funcionamiento social; estructurarle un plan de tratamiento el cual evaluará periódicamente para determinar si el mismo está respondiendo a las necesidades de éste y proceder con aquellos cambios necesarios para el logro de las metas rehabilitadoras y de protección social. (Regla 2).
Las determinaciones del Comité deberán estar fundamentadas por hechos e información sometida a su consideración, y debe evidenciarse la necesidad de la acción que se aprueba o recomienda. (Regla 5; Regla 9(C) (3)). La jurisdicción del Comité de Clasificación incluye los cambios de custodia, (Regla 6(B)(2)(a)), y la acreditación, cancelación y restitución de bonificación, (Regla 8(4)).
En toda evaluación de un caso en que se considere la asignación o clasificación de tipo de custodia, el Comité de Clasificación deberá tener presente los delitos cometidos, las circunstancias de éstos, la extensión de la sentencia dictada, el tiempo cumplido en confinamiento y aquellos factores que garanticen la seguridad institucional y pública. (Regla 10).
El Manual de Reglas 1979 define los grados de custodia que tendrán las instituciones penales, a saber, máxima (Regla 10(A)), mediana (Regla 10(B)) y mínima (Regla 10(C)).
Exponemos a continuación la definición de los grados de custodia máxima, mediana y mínima y los criterios que se deben considerar por el Comité al tomar su determinación al respecto.
La Regla 10(A) define custodia máxima como sigue:

“Se entenderá por custodia máxima aquel grado de supervisión donde se aplican un máximo de controles externos y restricciones físicas por haberse determinado, luego de una evaluación analítica del caso, que el confinado tiene muy poco o ningún control sobre sus impulsos y que sus acciones, actitudes y conducta amenazan seriamente su propia seguridad, la seguridad institucional y la seguridad de las vidas y propiedades de la comunidad. Bajo este tipo de custodia, el confinado será alojado en celda individual y participará en aquellos programas de tratamiento que el Comité haya dispuesto y de otros servicios propios para su condición, bajo supervisión intensa. ”

*739 La Regla 10(A)(2) dispone que se considerará la conveniencia de asignarle custodia máxima a un confinado cuando su historial social y delictivo así como su conducta y funcionamiento social refleje uno o más de los indicadores que se mencionan y definen allí, tales como: (a) trastornos mentales o desajustes emocionales; (b) conflictos en el área sexual; (c) historial de fugas; (d) agresividad; (e) contrabando; (f) que se tenga información confiable sobre el confinado que pueda resultar en amenazas a la paz o tranquilidad del clima institucional, o a la seguridad del propio confinado o .de otros ciudadanos de la comunidad; (g) actitud de indiferencia; (h) peligrosidad'; (i) delincuentes compulsivos; (j) delincuentes habituales; (k) que el confinado ingrese por haber violado la libertad bajo palabra o libertad a prueba al resultar convicto por delitos graves; y (1) que las circunstancias del delito y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia.
La custodia mediana se define en la Regla 10(B) como:

“Es aquel grado de supervisión donde se requiere un menor uso de controles externos para con el confinado por haberse determinado, luego de un estudio ponderado del caso, que éste cuenta con aquellos controles internos o los ha internalizado durante el confinamiento, que le permiten convivir con otros confinados; participar de los programas de tratamiento y de las actividades dentro del perímetro de seguridad institucional, sin necesidad de medidas de vigilancia extremas. Se considera que a pesar del confinado tener estos controles externos no está preparado aún para realizar actividades en el exterior del penal. ”

A renglón seguido, la Regla 10(B)(2) establece que se considerará la conveniencia de la custodia mediana a un confinado cuando el historial social y delictivo, así como su comportamiento reflejen mayormente los indicadores mencionados en los incisos (a) a (i) y el análisis de los mismos no se incline hacia la asignación de una custodia máxima, a saber: (a) casos que representen algún riesgo de fuga más allá del normal; (b) cuando el confinado viole su libertad bajo palabra o su libertad a prueba, resulte convicto por delitos menos grave o no cumpla con las otras condiciones impuestas; (c) cuando el confinado incurra en nuevos delitos mientras disfruta de custodia mínima; (d) cuando el confinado permanece en la institución en espera de. probatoria o de libertad bajo palabra; (e) cuando un cliente sentenciado tiene casos pendientes por resolver en un tribunal; (f) cuando el confinado desobedezca las normas de la institución y/o no muestre interés en participar en los programas de tratamiento; (g) cuando el confinado observe una conducta hostil y de reto hacia la autoridad; (h) casos clasificados en custodia máxima que muestren cambios favorables en su comportamiento observable y que evidencien interés en beneficiarse de los servicios y programas a su disposición; y (i) confinados que son devueltos a la institución luego de estar ubicados en centro de tratamiento públicos o privados en la comunidad, o en los Hogares de Adaptación Social.
La Regla 10(C) define custodia mínima como:

“Es aquella donde, luego de un estudio detenido del caso, se determina que el confinado puede funcionar con un mínimo de controles externos o restricciones físicas y se entiende que su circulación dentro de la institución o fuera de ella no representa peligro para la población penal, los empleados o para la comunidad. ”

La Regla 10(C)(2) de dicho manual establece que se considerará la conveniencia de asignarle custodia mínima a un confinado cuando el historial social y delictivo, así como su comportamiento, reflejen mayormente los siguientes indicadores y al análisis de los mismos no se incline hacia la asignación de una custodia mediana: (a) que el confinado no tenga casos pendientes por resolver en los tribunales; (b) que del historial social y de la evaluación ponderada del caso, se desprenda que el confinado no representa una amenaza para a población penal, empleados del sistema o para la comunidad; (c) que el historial delictivo y circunstancias en que cometió el delito no revelen peligrosidad o habitualidad; (d) que su comportamiento observable evidencie que ha ganado sentido de responsabilidad, que ha habido crecimiento personal, que ha demostrado interés por los programas de tratamiento y ha sacado provecho de éstos y que se ha trazado unas metas reales y claramente definidas para reintegrarse a la *740 comunidad; (e) que su historial social y delictivo no revele un riesgo de fuga, más allá del que representa todo confinado; (f) que el confinado acepte y observe las normas institucionales; (g) que su situación emocional sea razonablemente estable; (h) que se perfile como buen candidato para recibir tratamiento y participar en programas de comunidad; (i) que en los ocho (8) meses previos a su consideración para cambio de custodia de mediana a mínima, el confinado no haya cometido una ofensa menos grave o falta mayor (un año en los casos de ofensa grave); (j) que los confinados clasificados en custodia mediana muestren cambios favorables en su comportamiento observable y evidencien marcado interés en continuar beneficiándose de los programas y servicios a su disposición.
Por su parte, el Manual de Clasificación establece un sistema organizado para ingresar, procesar y asignar los confinados a instituciones y programas de la Administración de Corrección. En el mismo se establece que la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad. El proceso de clasificación coordina la custodia física de los confinados con los programas y recursos disponibles dentro del sistema correccional. Por lo tanto, para lograr un sistema de clasificación funcional, el sistema tiene que ubicar a cada confinado al programa y el nivel de custodia menos restrictivo posible para el que cualifique.
Una clasificación objetiva se define como un proceso confiable y válido mediante el cual se subdivide a los confinados en grupos, basándose en varias consideraciones entre las que se incluyen: la severidad del delito, historial de delitos anteriores, comportamiento en instituciones, los requisitos de seguridad y supervisión, y las necesidades identificables de programas y servicios específicos. El sistema consta de una clasificación inicial del confinado seguida de un proceso de reclasificación periódica de cada uno. El Comité de Clasificación y Tratamiento, creado por el Manual de Reglas 1979, es el responsable de evaluar las necesidades de seguridad y de programas de los confinados sentenciados.
Existen cuatro niveles de custodia que se basan en el grado de la supervisión que se requiere: Máxima, Mediana, Mínima y Mínima/Comunidad.
Máxima - Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento cuando los confinados de custodia máxima se encuentren fuera del perímetro de seguridad (la verja o el muro). Estos confinados deben estar en celdas individuales, siempre que sea posible.
Mediana - Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requieren dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.
Mínima - Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de emergencia fuera de la institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción.
El aludido Manual también establece que la reclasificación es la revisión periódica de los confinados en lo *741 que respecta a su programa como parte del Plan Institucional, así como también su categoría de custodia. El itinerario para completar la rutina de reclasificación del confinado en casos de custodia máxima, como es la de la recurrente, es cada 6 meses después de haber cumplido el primer año de su sentencia en custodia máxima
La sección 7 del Manual señala que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación o la vivienda asignada. Su función primordial es supervisar la adaptación del confinado y prestarle atención a cualquier situación pertinente que pueda surgir. Agrega que es importante que los confinados con sentencias prolongadas tengan la oportunidad de obtener niveles de custodia reducida, condicionado a su cumplimiento con los requisitos de la institución.
El Procedimiento de Reclasificación de la Administración de Corrección dispone que independientemente del estatus legal del confinado, el personal de clasificación tiene que cumplir con ciertos requisitos al hacer una recomendación para reclasificación de custodia, tales como: (1) revisar el auto de prisión y los documentos de apoyo complementarios que obran en el expediente criminal del confinado;. (2) revisar todos los formularios médicos y de salud mental; (3) revisar las puntuaciones de aptitud correspondientes a educación, adiestramiento vocacional y trabajo; (4) comunicarse con el Tribunal u otras fuentes para obtener información adicional, aclarar información o determinar del estatus de las órdenes de detención o de arresto antes de concluir las recomendaciones; (5) llevar a cabo una entrevista de 15 a 30 minutos con el confinado con. el propósito de explicarle al confinado el proceso de reclasificación, verificar y estudiar los datos básicos relacionados con la clasificación; informarle al confinado su nivel preliminar de reclasificación de custodia, e informarle al confinado de la próxima revisión rutinaria de reclasificación; (6) llenar el Formulario de Reclasificación de Custodia; (7) llenar el Formulario de Evaluación de Necesidades del Confinado; (8) documentar la revisión en el expediente social del confinado y entregar copia del mismo al confinado; (9) cuando se va a cambiar la clasificación de un confinado que tenga una designación por su salud física y mental, el Técnico Sociopenal lo informará al personal de Salud Correccional correspondiente.
El Sr. Fradera nos solicita que revisemos su clasificación de custodia. Alega que, aunque fue reclasificado a custodia mediana, debe ser clasificado bajo custodia mínima
Al examinar una decisión administrativa debemos tener presente que la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2101 et seq. y su jurisprudencia interpretativa, nos obligan a examinar toda decisión administrativa impugnada con un prisma de gran consideración y respeto. A esta norma de deferencia va unida una presunción de legalidad y corrección que debe respetarse mientras no se pruebe convincentemente lo contrario. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116 (2000); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425 (1997). La revisión judicial es limitada. Sólo determina si la agencia actuó arbitrariamente, o en forma tan irrazonable que abusó de su discreción. Mun. de San Juan v. J.C.A., 149 D.P.R. 263 (1999); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
La jurisprudencia respecto a las diferentes modalidades de deferencia debida a las determinaciones de hechos, conclusiones de derecho y las interpretaciones de ley de la agencia administrativa, reitera el propósito de “evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor”. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85 (1997).
En síntesis, debemos sostener la interpretación administrativa siempre que ésta encuentra apoyo en una base racional, aun cuando esa interpretación no sea la única razonable. El criterio rector de nuestra función revisora es, pues, el de la racionabilidad, por lo que estamos obligados a confirmar las interpretaciones administrativas siempre que la agencia no haya actuado ilegal o arbitrariamente, o en abuso de su discreción.
Es menester señalar que aunque los criterios y factores indicados para determinar el nivel de confinamiento *742 de un recluso son, en muchas ocasiones, elementos de juicio subjetivos, es el Comité, por tratar a diario con estos casos, quien está en mejor posición para determinar si a este recluso en particular se le debe adjudicar una clasificación de custodia mediana o mínima.
Finalmente, debemos reiterar que para que este Tribunal pueda revisar la decisión de una agencia administrativa, es imprescindible que la misma esté fundamentada aunque sea de forma sumaria. Ello es así porque si la parte adversamente afectada por la determinación de una agencia desconoce los motivos de ésta para su proceder, el trámite de revisión judicial de la determinación administrativa sería un ejercicio fútil, L.P. C. & D., Inc. v. A.C., 149 D.P.R. 869 (1999); RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999).
IV
En la causa del epígrafe, el récord ante nos avala la decisión del Comité. La razón por la cual al Sr. Fradera se reclasificó a custodia mediana está debidamente fundamentada.
El principal señalamiento del Sr. Fradera es que su reclasificación de custodia mínima a mediana fue injusta porque posee buenos ajustes institucionales y así lo había reconocido el Comité varias semanas antes. No obstante, cabe señalar que la Sección 7 HI-B del Manual de Clasificación permite efectuar revisiones no rutinarias cuando se obtiene información nueva de que el confinado causa problemas de manejo.
En este caso, al Sr. Fradera se le aplicó una Regla 23 del Reglamento de Procedimientos Disciplinarios. Ello, porque se recibió información confidencial que fue corroborada mediante correspondencia ocupada durante registros en las áreas de vivienda, la cual establecía que éste pertenecía a un grupo de confinados que extorsionaba a otros reos, solicitándole dinero para costear la introducción de teléfonos celulares y sustancias controladas a la institución. Conforme surge de la notificación de denegación de la apelación administrativa de fecha 1 de junio de 2006. La Regla 23 fue aprobado por haberse establecido de forma “preponderante y clara” los hechos imputados. Contra dicha conclusión, el Sr. Fradera sólo presentó alegaciones. Estas no son suficientes para movernos a intervenir con la determinación de la Administración de Corrección, por lo que procede confirmar la misma.
y
Por los fundamentos antes relacionado, se confirma la determinación recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIO 2007 DTA 14
1. Ley Núm. 8 de 5 de agosto de 1987.